JAY GOULD, Respondent, v. THE TOWN OF ONEONTA, Appellant.

A subscriber to the capital stock of a railroad corporation, who has failed to pay for the shares subscribed for, as required by the terms of his subscription, is properly chargeable with interest from the time of the default, and cannot compel the company to issue the stock until not only the principal, but the interest, is paid.

Defendant's railroad commissioners, under statutory authority (chap. 64, Laws of 1856, as amended in 1857; chap. 401, Laws of 1857), subscribed for $70,000 of the stock of the A. & S. R. R. Co., to be paid for as required by the directors of that company. Payment of the balance unpaid was required by the directors to be made November 1st, 1862. Payment was not made at that time; but, at various times thereafter, the commissioners issued bonds, dated November 1st, 1862, for the balance unpaid of the $70,000, part of which were delivered to the company, in payment for the stock, the residue was sold, and the proceeds so paid; the interest coupons, however, upon the bonds, due at the time of such delivery or sale, were torn off. The company claimed interest, and refused to deliver certificates for the stock until payment thereof. *Held*, that the company was entitled to bonds with coupons annexed, carrying interest from November 1st, 1862; and, when cash was paid on account of bonds sold, was entitled to the cash, with interest from that date; also, that the commissioners had the right to pay the interest, either by issuing bonds drawing interest from the time the payment should have been made, or by paying in money.

Said commissioners contracted to sell defendant's stock to W., plaintiff's assignor at par, and he, by their directions, paid to the company the amount claimed by it for interest, delivered to the commissioners one of defendant's bonds issued to pay for the stock, and gave to the commissioners his check for the balance, which they were to hold until the stock was transferred to him on the books of the company. The certificates of stock were issued to the commissioners, assigned by them to W., and left with the treasurer of the company, that a transfer might be made. Defendant thereafter brought an action and obtained an injunction restraining the company from transferring the stock. W. thereupon rescinded the contract of sale, and demanded back the money, check and bonds. This was refused, and subsequently the stock was issued to defendant, and sold by it. In an action brought to recover back the money paid and the value of the bond, *held*, that the transaction with W. was not violative of the provisions of the act of 1857 (§ 6), requiring sales of stock to be for cash; that it was, in fact, a conditional sale, to become absolute only when the stock was transferred and money paid; that such a sale was valid, and within the power of the commissioners to make.

Also, *held*, that, even if the amount claimed by the company was not legally due, the commissioners were the authorized agents of defendant, and had power to settle and adjust the claim ; and they having admitted it, and directed its payment by W., he having no knowledge that it was not due, and acting in good faith, defendant was bound by their acts, and that plaintiff was entitled to recover.

*It seems*, that the provisions of the act of 1859 (§ 1, chap. 384, Laws of 1859), in reference to the payment of town subscriptions to the stock of said company, which authorized the issuing of town bonds to the company, in payment for stock subscriptions, was not limited to subscriptions made after the passage of the act, but all subscriptions, whether made before or after that time, could be thus paid.

(Argued November 15, 1877 ; decided November 27, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial, without a jury. (Reported below, 3 Hun, 401.)

This action was brought to recover back moneys alleged to have been paid to defendant by one Wilber, plaintiff's assignor, under a contract for the sale of 700 shares of the stock of the Albany & Susquehanna Railroad Company, which contract was rescinded by Wilber because of failure on the part of defendant to perform.

The facts, as found, were substantially as follows:

In August, 1858, the town of Oneonta, defendant, by the consent of its tax-payers duly made and filed, and under and by virtue of the act, chapter 64, Laws of 1856, as amended by chapter 401, Laws of 1857, was authorized to subscribe for $70,000 of the capital stock of the Albany & Susquehanna Railroad Company, and afterwards and during the year 1858, commissioners for said defendant were duly appointed; and said commissioners in due form subscribed for 700 shares of the capital stock of said railroad company, for and on behalf of defendant. On the 30th day of October, 1862, the directors of the railroad company resolved that the amount unpaid upon town subscriptions was "required in the bonds of the respective towns as

required by law;" and notice of such resolution was given to the commissioners of the defendant.

On the 27th day of February, 1863, it was by said directors further resolved, "that the town bonds of Otsego (in which is the town of Oneonta, defendant) county be issued as to the company, "from November 1st, last uniformly, and that the interest, accumulated up to the time of sale, be paid into the company;" of which resolution the said commissioners had notice. At various times, between the 11th day of November, 1862, and the 21st of June, 1865, the commissioners of the defendant paid to the railroad company the bonds of said defendant or cash, to the amount of $70,000, in payment of said stock subscription. The bonds were dated November 1st, 1862, but when bonds were paid the past due coupons were cut off by the commissioners, and where cash was paid it was the proceeds of similar bonds — past due coupons being cut off before they were sold. The company charged the defendant with interest upon all of said bonds from November 1st, 1862, and credited it with such moneys as were received from it for the payment of such interest. There was claimed by said company from the defendant, on the 31st day of July, 1869, for back interest then unpaid, the sum of $6,633.52. The railroad company refused to issue to the defendant a certificate of stock for such 700 shares until said balance was paid; and the defendant, through its commissioners, declined to recognize such claim, or pay the same. On the 30th day of July, 1869, one David Wilber, the assignor of the plaintiff, contracted with said commissioners for the purchase of said stock at its par value of $70,000, and gave to said commissioners his check for $10,000, as part of the purchase price, agreeing to pay the balance when the stock was issued to him. Said Wilber was at the same time informed that the railroad company refused to issue certificates for the stock until their claim for back interest was paid, and the commissioners gave said Wilber an order to pay such back interest out of the purchase money, and for the railroad company to issue the certificate for the

stock. On the 2d day of August, 1869, the said commissioners and Wilber met at the railroad company's office, in Albany. The back interest had been paid by Wilber, and a receipt for the same had been given by said company to Wilber, as paid under protest. The certificate for 700 shares of the stock of the company was then duly issued to the defendant, or its commissioners. Soon thereafter Wilber transferred to said commissioners one of the railroad bonds of $500, issued by defendant to said railroad company, which bond and accrued interest was received by said commissioners in part payment for the stock. At the same time the said commissioners executed and delivered to said Wilber an assignment of said certificate. The commissioners gave up to Wilber his check for $10,000, and received from him a new check for $62,857.73, being the balance of $70,000 after deducting the back interest so paid, and said town bond. By the agreement between Wilber and the commissioners, the same was not to be presented for payment, or payment demanded, until the stock was transferred to Wilber on the books of the company, so that it could be voted upon at an election of directors, to be held in September, 1869. The officers of the company refused to make the transfer at that time, but promised to do so the next day. But upon the morning of the next day said company were enjoined from making said transfer, at the suit of the town of Oneonta as plaintiff.

Said stock was never transferred to Wilber or his assignee, under said contract, but a certificate therefor was issued by said railroad company to defendant, and the stock was sold by it. Before the commencement of this action, Wilber gave notice to the commissioners that he rescinded the contract, and demanded the repayment of the bond and moneys so paid by him as aforesaid, which was refused, and thereafter he sold and assigned his claims to the plaintiff.

*H. Sturges*, for appellant. The sale of the stock by the commissioners was a violation of the statute, not having been

at par or for cash. (Laws 1857, 813, § 6; *Turner* v. *Bk. of Fox Lake*, 23 How., 399; 3 Keyes, 425; 1 Cow., 359; 4 N. Y., 312; *Bradford* v. *Fox*, 16 Abb., 51, 53; 39 Barb., 203; 42 N. Y., 538; 6 Rob., 157; 21 Wend., 211, 215–219; 2 Stat. at Large, 296, § 59; *Decker* v. *Jackson*, 16 N. Y., 442; *Morton* v. *Campbell*, 14 Abb., 414; 37 Barb., 179.) The commissioners had no authority to admit the claim as a debt against the town, and provide for its payment. (*Dunning* v. *Smith*, 3 J. Ch., 332; *Delafield* v. *State of Ill.*, 8 Paige, 527; 26 Wend., 192; 2 Hill, 159; *F & M. Bk.* v. *B. & D. Bk.*, 16 N. Y., 537; *Adriance* v. *Roome*, 52 Barb., 399; *Munn* v. *Comm. Co.*, 15 J. R., 44; *Beals* v. *Allen*, 18 id., 363; *Scott* v. *McGrath*, 7 Barb., 53; *Stringham* v. *St. N. Ins. Co.*, 3 Keyes, 280; *People* v. *Bostwick*, 32 N. Y., 445; *Marvin* v. *Wilber*, 52 id., 270; *Arnott* v. *Pittston Coal Co.*, 9 Hun, 591; *Sar. Co. Bk.* v. *King*, 44 N. Y., 87.) The contract being illegal and void, the money paid on it cannot be recovered back. (*Burt* v. *Place*, 6 Cow., 431; *Merryweather* v. *Nipan*, 2 S. L. Cas., 528; *Best* v. *Strong*, 2 Wend., 319; *Perkins* v. *Lange*, 15 id., 412; *Nellis* v. *Clark*, 20 id., 24; 4 Hill, 24; *Mayor, etc.*, v. *Erben*, 38 N. Y., 305; *Otis* v. *Harrison*, 36 Barb., 210; *Jones* v. *Wilson*, 3 J. R., 434; *Menderback* v. *Hopkins*, 8 id., 436; *Wyman* v. *Farnsworth*, 3 Barb., 369; *Melchoir* v. *McCarty*, 11 Am. R., 606; *Fowler* v. *Scully*, 72 Pa., 466–468.) There was no interest due upon the claim. (*So. Cent. R. R. Co.* v. *Town of Moravia*, 61 Barb., 180, 188; *Starin* v. *Town of Genoa*, 23 N. Y., 439, 453–459; *Town of Venice* v. *Breed*, 1 N. Y. C. R., 130; 1 Redf. on Railways, 166, 167; *L. O. R. R. Co.* v. *Mason*, 16 N. Y., 451, 464; Tyler on Usury, 78; 3 Parsons on Contracts, 104; *Colton* v. *Bragg*, 15 East., 223; *Stevens* v. *Baringer*, 13 Wend., 639; *Facett* v. *Emmett*, 11 Paige, 142; *Decker* v. *Livingston*, 15 J. R., 479; *Patterson* v. *O'Hara*, 2 E. D. S., 58; *Brock* v. *Barnes*, 40 Barb., 521; *De Forrest* v. *Bloomingdale*, 5 Den., 304; *Lake* v. *Tyson*, 6 N. Y., 462; *Treadwell* v. *Adams*, 15 How., 219; *Sperry* v. *Miller*, 16 N. Y., 414.)

*O. W. Chapman*, for respondent. The payment by check was a payment in cash. (*Clark* v. *City of Rochester*, 28 N. Y., 639.) Even if the contract was illegal, because it provided for doing something prohibited by statute, Wilber was not *in pari delicto* within the rule forbidding the granting relief to one party to an illegal contract against the other. (*Tracy* v. *Talmage*, 14 N. Y., 162, 181, 216; *Knowlton* v. *C. & E. Spring Co.*, 57 id., 518; *White* v. *Franklin Bk.*, 22 Pick., 181; *Smith* v. *Bromley*, Doug., 670; *Merrit* v. *Millard*, 4 Keyes, 208.)

EARL, J. Under chapter sixty-four of the Laws of 1856, as amended by chapter 401 of the Laws of 1867, the railroad commissioners of the town of Oneonta were authorized to subscribe for the 700 shares of the stock of the Albany & Susquehanna Railroad Company. Having the authority to subscribe, they could do it in any appropriate and usual way. Hence the subscription they did make in 1858 was authorized. It contained the usual provisions of such subscriptions, and provided that they would take and pay for the stock in such manner and in such instalments as the directors of the company should require or deem proper. To pay for the stock thus subscribed for, they were authorized to issue the bonds of the town and sell them for not less than par. After the passage of the act of 1859 (chap. 384 of that year), I have no doubt that these commissioners, instead of selling the bonds and paying for the stock the money thus realized, could legally transfer the bonds directly to the company in payment for the stock. I do not believe that it was the intention of the Legislature to confine the operation of that act to subscriptions to be made after its passage. It was intended to make provision for taking and paying for the stock of that company, and whether the technical subscription for the stock was made before or after the passage of the act, mattered not.

The commissioners issued the bonds for the whole $70,000, and delivered most of them to the company in payment for

the stock, and those not delivered were negotiated, and the money paid to the company. The point was not taken in the answer, nor upon the trial, that the bonds were not properly issued and disposed of; and it is difficult to perceive how such point, if taken, could avail after the town had received and disposed of the stock for its full par value. Hence, even if I am wrong in my construction of the act of 1859, it must be assumed here that the bonds were properly issued and disposed of.

In making the stock subscription, issuing, negotiating and disposing of the bonds, paying for the stock, selling the same and paying the interest upon the bonds, the commissioners acted as the agents of the town. They were to receive the dividends upon the stock, and apply them in payment of the bonds, principal or interest. They were to report annually to the board of supervisors what sum of money was needed to pay principal or interest upon the bonds, and the supervisors were required to raise the money; and when raised, it was to be paid to the commissioners, and they were to pay it upon the bonds. And they were authorized to sell the stock at par for cash, and use the money thus realized to pay the bonds. They were the representatives and agents of the town, within the limits specified in the acts, in all matters pertaining to the stock and the bonds, and no other officers had any authority in reference to either.

Prior to November 1, 1862, some payments had been made by the commissioners upon the stock subscription. On the 30th day of October, in that year, the directors of the company adopted a resolution requiring payment of the several installments remaining unpaid, upon the several town subscriptions to the stock of the company, in the bonds of the respective towns. It is not disputed that this call was regular and properly made. And on the 27th of February following, the directors adopted a resolution that the bonds be issued to the company as of November 1st, 1862, and that the interest be paid to the company upon the bonds to the "time of sale." I suppose by the words "time of sale" was meant

the time of delivery of the bonds to the company, as by the prior resolution the bonds were required to be delivered to the company.

By the first resolution, the whole amount of the subscription became due November 1, and the balance in default after that date drew interest. Such is the general rule when money is not paid when it becomes due, and there is no reason for making money due upon a stock subscription an exception to the rule. The stock subscription drew interest until paid, and the town could not compel the company to issue the stock until the principal not only but the interest was paid.

After the adoption of these resolutions, during the years 1863, 1864, and 1865, the balance of the bonds were either delivered to the company, or sold and the proceeds paid to the company. All the bonds bore date November 1, 1862, but when so delivered or sold the interest coupons due at the time of delivery or sale were torn off, and the bonds were issued with only the coupons subsequently to become due. In the bonds the interest was made payable on the first days of May and November in each year, " on the presentation and surrender of the coupons."

It is clear that the company was entitled to bonds with coupons annexed, carrying interest from November 1, 1862, and when cash was paid on account of bonds sold, it was entitled to the cash with the interest from that date. In no other way could the stock subscription be paid a long time after it became payable by the terms of the subscription. The company did not waive its right to this interest, or intend to. It asserted its claim to it by the last resolution above referred to, in the accounts kept with the commissioners in its books, and in statements rendered and made to the commissioners. The commissioners disputed the claim and it was a subject of controversy, and the company refused to issue the certificates of stock until this interest was paid.

Under such circumstances, Wilber, plaintiff's assignor, came to the commissioners and entered into negotiation with

them for the purchase of the stock, and they agreed to sell to him at par. He was informed of the disputed claim of the company for the balance · claimed by it, and that the stock would not be issued without payment of that. They directed him to pay that to the company, under protest, as part of the purchase-price of the stock, and he then gave them his bank check for $10,000, and agreed to pay the balance when the stock should be transferred to him on the books of the company, and they executed to him a written assignment of the stock, and gave him an order on the treasurer of the company, directing him, upon the payment of the balance claimed, to issue the certificates of stock to Wilber. Wilber then called on the treasurer of the company and paid the back interest, and demanded the certificates of stock, but the treasurer refused to issue them. He and the commissioners then met at the office of the company; and, to meet a requirement of the treasurer that the stock should be paid for in cash before he would issue it, it was arranged that the commissioners should give up the check for $10,000, and that Wilber should pay the balance due them for the stock by delivering to them one of the town bonds which had been issued to pay for the stock, and giving his check for the balance. This was done, and the commissioners were to hold the check until the stock was transferred to him on the books of the company. The certificates of stock were then issued to the commissioners, and by them assigned and delivered to Wilber, and then left with the treasurer of the company, with a request that the stock of the company be transferred on the books to Wilber. Before the transfer could be made, an action was commenced by the town, and an injunction issued and served, restraining the company from making the transfer. The contract of sale was subsequently rescinded, and Wilber demanded of the commissioners his bond, check and the money he had paid. They refused to refund the money or deliver up the bond, and subsequently the stock was issued to the town, and by it sold.

It is said that this transaction with Wilber was illegal,

because it was not a sale for cash. The commissioners were not prohibited from making a contract for the sale of the stock; but they were required to get the cash when they passed the title to the stock by a sale, or to exchange the stock, in whole or in part, for the bonds which they had issued. (Section 6 of chap. 401, Laws of 1857.) It would be a sale for cash if they were to receive cash when they passed the title. (*Clarke* v. *City of Rochester*, 28 N. Y., 605.) This was, in fact, a conditional sale, to be absolute only when the stock should be transferred upon the books. The certificates were assigned and delivered conditionally, the sale to be void if the condition was not fulfilled. The check was delivered, with the agreement that the money was not to be drawn until the condition was fulfilled and the title passed. This must be regarded as a cash payment, within the meaning of the act. Cash payment of such large sums is usually made by check. In such a case, the check may be regarded as the representative of the money. If, upon due presentation, it should not be paid, it could be returned, and the property sold reclaimed. The sale is a cash sale. The check is not taken as payment; and, if it does not produce the cash, the sale may be rescinded. Hence, there was nothing illegal in the contract made between Wilber and the commissioners.

But it is further contended that the commissioners had no right to pay this claim of the company, as the statute requires, upon a sale of the stock, that the proceeds shall be used for the redemption of the bonds. The purpose of the statute was to have the proceeds of the stock applied in satisfaction of the debt of the town, created for the purchase of the stock. In the first instance, bonds bearing interest were to be issued to pay for the stock in an amount sufficient for that purpose. Here the bonds issued were insufficient; that is, some of the interest coupons attached to them, which were parts of the bonds, had been torn off. With the proceeds of the stock they were to pay the coupons, as well as the bonds. There was nothing, that I can perceive, which prevented the commissioners from re-annexing the

detached coupons to the bonds, and then paying them. Or, if they had destroyed them, they could execute new ones, and annex them; or they could, just before Wilber made the payment to the company, have delivered to the company, properly executed, coupons for the amount of the back interest — that is, they could then have done what they should in the first instance have done. They could have righted a wrong which they committed, when they tore off the coupons. Having the right, then, thus to issue the coupons, and then pay them, they could omit that mere matter of form, and pay the interest, without first issuing coupons therefor. The substance and real nature of the transaction would have been the same. If they could thus make the payment, it will not be disputed that they could authorize Wilber to make it, as part of the purchase-price of the bonds.

But, if I am wrong in this, and the amount claimed by the company was not legally due, the same result will be reached. Wilber had no knowledge that it was not due, and acted in good faith. The commissioners were the agents of the town to procure this stock, and to pay for it, and to settle with the company; and to adjust the amount due it for principal or interest on account of the stock or the bonds delivered to it. They were to have the stock upon paying for it; and if there was any dispute as to the amount due, there were no other persons but them to act for the town. The company claimed this balance, and refused to issue the stock until it was paid. The commissioners, for the purpose of getting the stock, were willing to admit and pay the claim; and they directed Wilber to make the payment. As to Wilber acting in good faith, the case must be the same as if the claim were valid, and enforcible by the company. The commissioners acted within the scope of the authority conferred upon them by the statutes, and their acts must bind the town for which they acted.

We can rest here. The discussion of this subject is by no means exhausted; but enough has been said to show that

the case was properly decided in the Supreme Court, and that the judgment should be affirmed.

All concur; RAPALLO, J., concurring in result.

Judgment affirmed.