## HOAG v. TOWN OF GREENWICH.

*(Supreme Court, General Term, Third Department. September 9, 1891.)*

**1. RAILROAD AID BONDS—ISSUANCE BY TOWN—VALIDITY.**
Laws N. Y. 1869, c. 907, amending the general railroad act, authorized any municipal corporation, through commissioners, to aid any railroad company by issuing its bonds payable 30 years from date. Laws N. Y. 1871, c. 925, passed May 12th, provided that the commissioners might issue the said bonds payable at any time they might elect, less than 30 years. But they shall not so issue said bonds that more than 10 per cent of the principal of the whole amount of bonds issued shall become due or payable in any one year. *Held*, that bonds issued for said purpose by a town prior to May 12, 1871, payable 20 years after date, are void. *Potter v. Greenwich*, 92 N. Y. 662, followed.

**2. SAME—RIGHTS OF PURCHASERS.**
But bonds issued by the commissioners after May 12, 1871, payable 20 years after date, are valid, though more than 10 per cent. of the whole amount issued became due in one year, since a purchaser had no means of knowing the amount falling due in any one year.

**3. JUDGMENT—RES JUDICATA.**
The complaint in *Potter v. Greenwich*, 92 N. Y. 662, alleged in the first count that by mistake the bonds were made payable in 20 instead of 30 years. The second offered to surrender the bonds as illegal. The third was a simple count for money paid and laid out for the city's benefit, and a reformation of the bond or recovery of the amount was demanded. Defendant's demurrers to the second and third counts were overruled, but judgment was rendered for plaintiff only on the first count. The general term reversed the judgment on the first count, and sustained the demurrers. The court of appeals affirmed the judgment of the supreme court, and dismissed the complaint, but not on the merits. *Held*, that such judg-

ment constituted no bar to a subsequent action on the same bonds, under Code Civil Proc. N. Y. § 1209, which provides that "a final judgment dismissing a complaint * * * does not prevent a new action for the same cause of action, unless it expressly declares or it appears by the judgment roll that it is rendered upon the merits."

Appeal from special term, Saratoga county.

Action by Isaac Hoag against the town of Greenwich on certain bonds. Judgment for plaintiff as to a part of the bonds. Both parties appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Cowen, Dickerson, Nicoll & Brown,* (*Esek Cowen,* of counsel,) for appellant. *Westfall & Whitcomb,* (*D. M. Westfall,* of counsel,) for respondent.

LEARNED, P. J. By a general act (chapter 907, Laws 1869,)[1] the general railroad law was amended, and, through commissioners appointed as therein directed, municipal corporations, including towns, were authorized to make, issue, sell, and dispose of their bonds, and to use the avails in the manner therein prescribed. Such issue and sale of bonds was undoubtedly a borrowing of money by the municipal corporation; for the bonds had no validity until issued, and their issue was therefore not, in accurate language, a sale of property. But the money received by the commissioners was in fact borrowed by the municipal corporation through its agents. *Coddington* v. *Gilbert,* 17 N. Y. 489. The commissioners were agents of the municipal corporation. *Gould* v. *Town of Oneonta,* 71 N. Y. 298. Under this amendatory act, a majority of the tax-payers of the town of Greenwich took proceedings to have the town borrow $40,000. The matter was heard before the county judge, and his adjudication thereon was made, which, by section 2 of the statute, has the same force and effect as other judgments and records in courts of record in the state. He adjudged that the petitioners represented a majority of the tax-payers and of the taxable property, and he appointed the commissioners, as authorized by the statute. These commissioners executed bonds of said town of Greenwich, and sold them at par, during the year 1871. Thus, as is shown above, the town borrowed from the so-called purchasers of the bonds the amount paid for them. The commissioners for the town invested the money received in bonds of the Greenwich & Johnsonville Railroad Company, according to the provisions of the said statute and the petition of the tax-payers aforesaid. The money thus received by the railroad company was expended in the construction of a bridge into said town of Greenwich, and in depot and terminal buildings in said town. Up to the year 1877 the railroad company, instead of paying the interest on its own bonds held by the town, paid the coupons on the town bonds to the holders thereof. For the years 1877 and 1878 the town of Greenwich paid the semi-annual interest on its bonds to the holders thereof with moneys raised by taxation, including the coupons payable January 1, 1879. Since that time the town has paid no interest or coupons, and since 1880 has repudiated the said bonds and coupons. The plaintiff was one of the original lenders of money to the town, as above stated, and received a bond therefor. He is also the assignee of the bonds, and the rights of many other lenders, and in all holds 30 of these bonds, of $500 each. In February, 1880, the bonds were tendered to the supervisor of the town, and several demands were made of him, viz.: Payment of interest and coupons; issue of bonds in accordance with chapter 907 aforesaid in place of the bonds tendered; payment of the several sums, of $500 each, as moneys paid for the use and benefit of the town. These demands were refused. The ground on which the town denies its liability is that by section 4 of the statute aforesaid the bonds

[1] Gen. Act N. Y. 1869, c. 907, authorized any municipal corporation to aid any railroad in the state by issuing its bonds payable 30 years from date.

are to be payable 30 years from their date, while the bonds in question are dated March 25, 1871, and are payable July 1, 1891.

We have then this condition of affairs: The defendant has borrowed money of the plaintiff and his assignors for a purpose and in a manner (except as to the time of maturity of the bonds) authorized by statute. It has received this money and has invested it in securities, as it was authorized to do. It refuses to pay its own obligations given therefor on the ground that they were made payable at too short a time; it refuses to give other obligations in the place of these, payable at the proper time; and it refuses to return the money which it has borrowed, and for which (as it claims) it issued void obligations. Whatever may be the law in such case, it is plain that justice demands that plaintiff shall have some relief. Common sense says that it is wrong that a person shall borrow money, and shall escape repaying it by giving a void obligation therefor. That is what this defendant has done up to this time in respect to most of this indebtedness. *Chapman* v. *City of Brooklyn,* 40 N. Y. 372, at 380.

It may be well, in the outset, to examine previous litigations in regard to the class of securities here in question. One Potter, in 1880, commenced an action against the defendant in respect to one of these bonds. His complaint contained three counts. The first set forth the proceedings under which the bonds were issued. It averred, in substance, that the bonds were by mistake issued for 20 years instead of 30; and that the then plaintiff had tendered his bond to the commissioners, and requested them to execute one according to the statute, which the commissioners declined to do. The second count set forth more briefly the issue of the bonds by defendant; the payment therefor by Potter; the refusal of defendant to pay the coupons on the ground that the bond was illegal; the offer to surrender the bond; and the demand of the money. The third count was a simple count of money paid, laid out, and expended by Potter to the lawful use of defendant, and defendant's promise to repay, with interest. The judgment demanded was a reformation of the bond; if not, then a recovery of the amount. The defendant demurred to the second and third counts, and answered the first. The special term overruled the demurrer, with leave to answer over. Defendant did not answer over. The case subsequently came on to be tried on the first count, and judgment was rendered for plaintiff, Potter, practically giving the equitable remedy of reformation. On appeal to the general term, the majority of the court reversed the judgment on the trial of the issue of fact, and also reversed the judgment on the demurrer. *Potter* v. *Greenwich,* 26 Hun, 326. On appeal to the court of appeals, the judgment on the demurrer was affirmed on the prevailing opinion below, and an opinion was given affirming the judgment on the trial of issues. 92 N. Y. 662. The court of appeals, therefore, said that a count for money paid to the lawful use of a town was not good, for that was the only question raised by the demurrer to the third count. How that decision is consistent with *Hathaway* v. *Cincinnatus,* 62 N. Y. 434, as cited in *Horn* v. *New Lots,* 83 N. Y. 106, I am unable to say. The judgment in that case was at first entered as a judgment dismissing the complaint on the merits. Subsequently this was modified. So that the judgment is now simply a dismissal of the complaint without saying that it is on the merits. That judgment, therefore, does not prevent a new action for the same cause. Code, § 1209. The same is true of the other actions commenced at the same time, and which were to abide the event of the Potter action. The case of *Brownell* v. *Town of Greenwich,* 114 N. Y. 518, 22 N. E. Rep. 24, affirming 44 Hun, 611, arose on five other of these bonds, and was heard on a submitted case filed as of December 31, 1884. The opening sentence of the opinion might be considered to be an answer to the statement that a town is not shown to be liable by a complaint alleging money paid to its use. It says that the defendant is "a municipal corporation, with power to borrow money on

an extensive scale, and to invest it in stock or bonds," etc. It proceeds: "The plaintiff when he paid his money for the bonds in question paid it to the town, and the town received it, and invested it in railroad bonds, which it is presumed to still hold, and which, in the absence of proof to the contrary, are presumed to be of value. The defendant contends that he (the plaintiff) received nothing of value, because, as it claims, the bonds * * * are void." It was held in that case that the actual delivery of the bonds determined the date when they were issued; and that the bonds then in question were issued July 1, 1871, and after the passage of chapter 925, Laws 1871, which was passed May 12th, which amended section 4 of the bonding act, and authorized the issue of bonds payable at less than 30 years. Judgment was rendered for the interest or coupons then payable.

In applying these decisions to the present case, it is to be observed that the learned justice found that of the 30 bonds in suit, all numbered from 15 upwards were issued after May 12th, being 26 in all, and that these were valid; that the others, viz., Nos. 8, 9, 10, and 11, were issued before that date, and are void. Now, in regard to these 26, the decision last cited is applicable, unless the present case is affected by a clause in the amendatory act above cited, which says: "But they shall not so issue the bonds that more than ten per cent. of the principal of the whole amount of bonds issued shall become due and payable in any one year." These 26 bonds were all issued in 1871, so that more than 10 per cent. of the whole issue did become payable in one year. And the defendant insists that for this reason the bonds are void. Now, if the defendant is right on this point, then the 5 bonds in the *Brownell Case* were void; for they, as well as the 26 above specified, were all payable at one time; and therefore they violated that statutory provision that only 10 per cent. should be payable in a year. It would seem, however, from the case and the opinions, that there was no affirmative statement then before the court whether any bonds other than those of Brownell had been issued after May 12th. The defendant urges that the issue and delivery by the commissioners of more than $4,000 of bonds payable in one year made all beyond that amount void. On this defendant cites *Thompson* v. *Town of Mamakating,* 37 Hun, 400, affirming 106 N. Y. 674, 13 N. E. Rep. 937. That was a case where commissioners were authorized to issue $175,000 of bonds. By mistake, they issued still another bond, "without any consideration therefor," and delivered it to one David, who immediately agreed to surrender it, but afterwards disposed of it. It was held that it was void. It appears, therefore, that the bond was issued without authority and without any consideration. The particulars are not stated, but it would seem that the bond had no real delivery; was issued by mistake, and without consideration; and was not claimed by the person who received it to belong to him. In these respects, that bond was entirely unlike those in question. They were delivered for a full consideration, and not by mistake. Both parties intended to make a valid transaction; and, if there is any fraud in connection with the affair, it is on the part of the defendant, which has obtained the plaintiff's money on the pretense of giving a good obligation, and refuses to return the money, while it claims to have put off a void obligation upon the plaintiff.

Now, these commissioners, under the amendatory statute, could, after May 12th, issue these bonds, and all of them, so that they would be valid. They did not, as in the *Mamakating Case*, issue a larger amount of bonds than they were authorized to issue in all. It was entirely out of the power of any person who loaned his money to ascertain how many bonds had been previously issued. The knowledge of that fact was with the commissioners only. A person who loaned his money, and received therefor eight of the bonds in question, could not ascertain whether any had been previously issued, or, if they had been, whether such previously issued bonds were payable in 1891 or in 1890, or in some other year. It cannot be supposed that the statute

was intended as a trap to enable the commissioners to swindle unsuspecting lenders by pretending that they had not previously issued any bonds payable in 1891, when they had done so in fact. Suppose a lender had inquired of one of the commissioners, and he had informed him that no bonds payable in 1891 had been issued, he could not ascertain the falsity of the statement, if it was false; for he could not know in whose possession the issued bonds were, as is clearly pointed out in the *Brownell Case*, at page 530, 114 N. Y., and page 27, 22 N. E. Rep. As is said in *Gould* v. *Sterling*, 23 N. Y., at 463: "It being shown by other evidence that the agency existed, and that the act done was within the general scope of the power, the principal is bound by the representation of the agent as to any essential facts known to the agent, but which the party dealing with him had no certain means of ascertaining." So in *Farmers' & Mechanics' Bank* v. *Butchers' & Drovers' Bank*, 16 N. Y., at 134, the same doctrine is stated. Here the commissioners were agents of defendant. The general scope of the power was to issue bonds. The extrinsic fact which is claimed to have limited that power in the present case was the previous issue of $4,000 of bonds payable in 1891. Just as in the case last cited, the extrinsic fact which limited the teller's power to certify checks was the want of funds of the drawer. But these extrinsic facts were known to the agent, and were not known to the person dealing with him. As to these, then, such person could rely on the agent's representations.

The argument of the defendant, applied to the case last cited, of the certification of a check by a teller of a bank, would hold that such certification was a false representation of the existence of his power to certify; for certainly the authority given to him is only to certify when the drawer has funds. So in the present case we may, for the sake of argument, admit that the authority given was to issue bonds payable in 1891, when $4,000 payable in that year had not previously been issued. But the general scope of the power was to issue the bonds. The limitation was an extrinsic fact, not discoverable by the lender. We think, therefore, that the court held correctly as to the 26 bonds.

But the defendant urges that 18 of these bonds were involved in the Potter litigation, and that the judgments in that litigation are conclusive against them. Where, under section 191, subd. 1, the appeal contains the assent that judgment absolute may be given, and the appellant fails on his appeal, the judgment then rendered ends the action, and is therefore called absolute. But it is not more absolute than any other final judgment. If a plaintiff were nonsuited at the circuit, and that nonsuit were finally affirmed by the court of appeals, the judgment would still be a judgment of nonsuit, and nothing more. As in the *Potter Case*, the plaintiff recovered at the special term. The general term reversed the judgment, and granted a new trial. What would have been proved at the new trial we cannot determine. The plaintiff appealed to the court of appeals, and that court dismissed the complaint. That decision adjudged that on the former trial the plaintiff had not made out a case for relief. But the complaint was not dismissed on the merits. Thus the plaintiff was not, as above stated, barred of another action. The judgment was like a nonsuit. As a precedent, of course, the case showed that the facts proved did not justify the equitable relief which the special term had granted. But it expressly appears that the judgment was not on the merits. Therefore the merits were not decided. The action was brought to a trial of fact on the count to reform the bond, and the plaintiff failed. If the special term had done what the court of appeals held right, it would have dismissed the complaint, not on the merits, on the first count, and would have given judgment for defendant on the demurrer to the second and third. If we look at section 1209, we shall see that the language is unequivocal: "A final judgment dismissing the complaint * * * does not prevent a new action for the same cause of action, unless it expressly declares or it appears by the

judgment roll that it is rendered upon the merits." In the present case we have a final judgment which does not expressly declare that it was "upon the merits," but from which those words have been stricken out by the court. As is remarked in *Bell* v. *Merrifield*, 109 N. Y., at 213, 16 N. E. Rep. 55: "It does not appear, either in the record or outside, upon what ground the general term granted a new trial to defendant, nor upon what ground the order granting it was affirmed in this court. The general term may have reversed * * * not upon any question affecting the merits of the controversy." We are therefore of the opinion that the decision in the *Potter Case*, and those cases which took the same course, does not prevent a recovery here.

As to the remaining bonds, viz., the eight which were issued prior to May 12th, the opinion in the *Potter Case* seems to forbid a recovery. For myself, however, I see no justice in permitting a person, natural or artificial, authorized to borrow money, to refuse to repay the money which has been borrowed. If the writing given as evidence of the loan is invalid, still the debt remains, and the debt can be recovered in an action for money had and received. In this present case the only difficulty is that, probably by a comparison of two statutes, the bonds were made to run for 20 years instead of 30. The court of appeals has held that the bonds cannot be reformed, and that a recovery cannot be had upon those issued before May 12th, in their present shape. Therefore the defendant borrowed the money, and gave no valid instrument for it. Then it should repay the money, or else should give such instrument as should have been at first given. To do otherwise is dishonest, and no decision will make it anything else. If the town insists that the money was not to be repaid for 30 years, at least the interest was to be paid semi-annually. By this bonding legislation towns obtained the right of borrowing money to a large extent for purposes foreign to their municipal business. With the right to borrow comes the obligation to repay what has been borrowed. Otherwise the right to borrow would be a right to steal. And that obligation to repay is not discharged when the agent of the borrower delivers to the lender an invalid promise to repay. Let us suppose, by way of illustration, that the lender had handed his money to the commissioners, and that they had neglected or refused to deliver any bonds of the town to him. Would he be remediless? But how would such a case differ in its merits from the present, where the commissioners have delivered a paper purporting to be a bond, but which is held to be invalid? If these commissioners had executed these bonds in the present form, with the fraudulent intent of cheating the borrowers out of their money, I suppose that the town, on receiving the money, could not have relied on the fraud as a defense against repayment. It could not accept the benefit of the fraud without being liable to restore what it had received. But unfortunately the commissioners were honest, and only made a mistake. Therefore, as the *Potter Case* seems to hold, the town receives the benefit of the mistake, and the lender loses his money. The judgment is affirmed on both appeals, with costs. All concur.

### APPEAL FROM ORDER GRANTING ALLOWANCE.

LEARNED, P. J. The order granting an allowance is affirmed, with $10 costs and printing disbursements. All concur.