## Thomas W. Brownell, Respondent, v. The Town of Greenwich, Appellant.

In a case submitted under the Code of Civil Procedure (§ 1279) to test the validity of certain town bonds, alleged to have been issued by defendant, it was stated that proceedings were instituted under the town bonding act of 1869 (Chap. 907, Laws of 1869), that the county judge "duly adjudged, determined and ordered" that the allegations in a petition, duly verified and presented, "are proved and substantiated;" that the petitioners represented a majority of the taxpayers and of the taxable property; that after such adjudication and order the county judge "duly appointed and commissioned" three duly qualified commissioners, who were duly sworn, and, assuming to act as officers of the town, issued bonds, purporting to be bonds of the town, which recited that they were issued by authority of said act, of which bonds those in question were a part; that said bonds were placed in the hands of one A., treasurer of the railroad, to sell and apply the proceeds to the purchase for the town of mortgage bonds of the railroad company; that this was done and the railroad used the avails in the construction of a continuation of its road, etc.; that plaintiff bought his bonds in good faith, paying par in cash. *Held,* that the admissions in the statement implied the existence of every fact essential to perfect regularity of procedure and to confer jurisdiction of the subject-matter and of the parties, including defendant; that it was, in effect, admitted that the persons appointed became commissioners of the town *de jure,* with authority to issue the bonds, and their acts, within the scope of their authority, were acts of the town; also *held,* that said commissioners could lawfully employ an agent to sell the bonds and invest the proceeds as directed.

The rule of pleading facts prescribed by the Code of Civil Procedure (§ 532), is applicable to the statements of facts required for the submission of a controversy; and statements of facts, which impliedly allege jurisdiction, are sufficient as admissions that jurisdiction exists.

It was claimed by defendant that the bonds were void because made payable in twenty years instead of thirty, as required by the town bonding act. The bonds bore date May 12, 1871; those in question were less than ten per cent of the whole issue; they were purchased and delivered in July, 1871, after the passage of the act of that year (Chap. 925, Laws of 1871), amending the town bonding act by authorizing the issuing of bonds payable at any time the commissioners may elect, less than thirty years, but requiring that not more than ten per cent of the whole issue "shall become due and payable in any one year." *Held,* that plaintiff had the right to assume that the bonds were issued under the statute as it stood at the date of delivery; that he was not bound to examine the entire series to see that no more became due in a single year than the statute

Statement of case.

permitted, and had the right to assume that defendant, through its lawfully appointed commissioners, would not do an act utterly void and so commit a fraud by taking plaintiff's money without consideration.

Also, *held* (BROWN, J., dissenting), that the act of 1871 applied to bonds issued after it went into effect, in pursuance of a consent of taxpayers given and adjudicated upon before that time, and as so construed said act was constitutional.

*Potter* v. *Town of Greenwich* (92 N. Y. 662; 26 Hun, 326); *People* v. *Batchellor* (53 N. Y. 123); *Horton* v. *Town of Thompson* (71 id. 513) distinguished.

(Argued March 6, 1889; decided June 11, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, rendered June 30, 1887, upon a case containing a statement of the facts as agreed upon by the parties pursuant to section 1279 of the Code of Civil Procedure.

On December 31, 1884, the plaintiff commenced an action against the defendant, based upon the facts hereinafter stated, but subsequently the parties agreed that said action should be suspended and the questions in difference submitted to the Supreme Court as of the date when the action was commenced. They further agreed that, for the purpose of the application of any statute of limitations or claim of laches, the case containing the agreed statement of facts should be deemed to have been duly filed on said 31st of December, 1884.

The most material facts upon which the controversy depends, as set forth in the case, are as follows: The defendant is a domestic municipal corporation and is one of the towns composing the county of Washington, in this state. In 1870 a railroad corporation, known as the Greenwich & Johnsonville Railroad Company, was trying to extend its railroad, by a bridge across the river dividing said town of Greenwich from an adjoining town, where its terminus then was, and to erect a depot and other terminal structures on the Greenwich side of the stream. In order to accomplish this the company, about August, 1870, issued its bonds for $50,000, secured by a second mortgage upon the road and franchises. Subsequently, certain proceedings were instituted, pursuant to chapter 907

of the Laws of 1869, to issue the bonds of said town, to aid in the construction of said road. What those proceedings were does not expressly appear, but the case states that on the 21st of March, 1871, the county judge of Washington county " duly adjudged, determined and ordered " that the allegations contained in a petition of certain taxpayers of said town, duly verified and presented to said judge under and by virtue of said act, " are proved and substantiated to my satisfaction, and that the said petitioners do represent a majority of the tax-payers of said municipal corporation of said town of Green-wich, in said county of Washington, as shown by the last preceding tax list or assessment-roll of said town, and do represent a majority of the taxable property of said town upon said list or roll, and that this order be entered and recorded in the office of the clerk of the county of Washing-ton." Said judgment contains certain recitals and states that it was made " on reading the order granted on the presentation of said petition and after taking due proof of the notice issued thereon, and of the due publication of said notice and of the facts set forth in said petition." The judgment was duly entered and recorded in said clerk's office on the same day that it was rendered.

The taxable property of the town, as shown by said assess-ment-roll, was the sum of $1,404,696. Immediately after such adjudication and order the county judge " duly appointed and commissioned " three duly qualified commissioners for said town for the purposes named in the act. Said commissioners accepted the appointment, were duly sworn and entered upon the discharge of their duty. Thereupon, assuming to act as officers of the town, they prepared, subscribed and sealed eighty bonds of $500 each, dated March 25, 1871, payable July 1, 1891, with semi-annual interest purporting to be the bonds of the town and reciting that they were issued by authority of said act, with the assent of said town obtained according to law. Thereafter they placed said bonds in the hands of one Andrews, a bank president and the treasurer of said railroad company, with directions to sell the same for

cash and to apply the proceeds to the purchase, for said town, of the second mortgage · bonds of the railroad company at eighty cents on the dollar. Pursuant to such directions said Andrews sold the bonds of the town, from time to time as he had the opportunity, to different purchasers for cash and invested the proceeds in said railroad bonds at eighty per cent. The railroad company used the avails mainly in the construction of said bridge, continuing the road into the town and in the erection of depots, offices and other terminal buildings situate in said town. The railroad has been in actual operation ever since and the defendant has ·been in the full enjoyment of the advantages it sought. The commissioners received from said Andrews railroad mortgage bonds to the amount of $50,000 par value, and so far as appears the town still owns the same. None of the funds received by Andrews upon the sale of the bonds of the town actually went into the hands of the commissioners, and he did not account to them therefor except by delivering to them the railroad bonds for the avails thereof, as aforesaid. On July 1, 1871, the plaintiff bought of said Andrews five of said town bonds at par, and paid therefor the sum of $2,500 in cash, which was invested for the town in railroad bonds and applied to the use of the railroad company in the manner above stated. Until 1877, said company, in lieu of paying interest upon its bonds held by the town, paid semi-annually to the holders of the town bonds, including the plaintiff, the interest coupons attached thereto ; and for the years 1877, 1878, and up to and including January 1, 1879, the defendant paid the interest semi-annually to said holders with moneys raised by taxation in the usual way. The last payment by the town to the plaintiff was the sum of $175, made during the latter part of January, 1879, as and for the interest due on the first of that month upon his five bonds. Since 1880 the town has repudiated said bonds and coupons and has insisted that it was not liable thereon, mainly upon the ground that the bonds are void on their face because issued for a term not authorized by law. It is further admitted that

the plaintiff purchased his bonds in good faith and upon the representation of said Andrews that they were good and valid and in the belief that they were so. A majority of the commissioners intended to properly perform their duties as such, and believed that the bonds were valid and legal. The remaining commissioner is now dead, and his motives are not known except that he acted with his colleagues in all matters pertaining to the bonds.

*Esek Cowen* for appellant. Jurisdiction is only presumed in the case of a court of general jurisdiction proceeding according to the course of the common law. In cases of courts of limited jurisdiction the facts constituting the jurisdiction must be alleged and proven. (*Mills* v. *Martin*, 19 Johns. 33; *Thomas* v. *Robinson*, 3 Wend. 267; *Wheeler* v. *Raymond*, 8 Cow. 311.) The recitals in the judgment fail, in several particulars, to show the facts conferring jurisdiction on the county judge. (*People* v. *Spencer*, 55 N. Y. 1; *Angel* v. *Town of Hume*, 17 Hun, 374.) It was necessary to give the county judge jurisdiction that a petition, stating facts made necessary and indispensable by statute, should be presented to him, and that a notice of a particular character should be published for a certain space of time. (*People* v. *Walker*, 23 Barb. 304.) The allegation that some act of a court was "duly" performed was not equivalent to an allegation of jurisdictional facts. (*Cleveland* v. *Rogers*, 6 Wend. 438; *Ladbroke* v. *James*, Willes, 199; *Mills* v. *Martin*, 19 Johns. 7.) The bonds, showing on their face that they are authorized by the statute under which they purport to be issued, are absolutely void, and there can be no such thing as a *bona fide* holder of such bond. (*Starin* v. *Town of Genoa*, 23 N. Y. 439; *Gould* v. *Town of Sterling*, Id. 456; *People* v. *Mead*, 24 id. 114; *Horton* v. *Town of Thompson*, 71 id. 513.) The non-compliance with the law appearing on the face of the bond, any purchaser was charged with notice of its invalidity. (*Horton* v. *Town of Thompson*, 71 N. Y. 513.) There has been no ratification of these bonds by the town. (*Town of*

*Gallatin* v. *Houcks*, 21 Barb. 578; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392.) A contract that is illegal on its face cannot be ratified. (*Smith* v. *City of Newburgh*, 77 N. Y. 130.; *Horton* v. *Town of Thompson*, 71 id. 574; *Delafield* v. *State of Illinois*, 26 Wend. 227.) A ratification of an unauthorized act of an agent must be with full knowledge of the facts. (*Nixon* v. *Palmer*, 8 N. Y. 398; *Seymour* v. *Wyckoff*, 10 id. 213.) The town could not, in any event, be estopped as to this plaintiff. He did not purchase his bonds after the town had paid the interest in 1877 and 1878, or in reliance on such payment. (*Calhoun* v. *D. & M. R. R. Co.*, 28 Hun, 402.) The power to sell bonds is not a power to borrow money. (*Starin* v. *Genoa*, 23 N. Y. 429; *People* v. *Mead*, 24 id. 115; *Horton* v. *Thompson*, 71 id. 513.) A town, under the laws of this state, is not a municipal corporation. (*Lorillard* v. *Monroe*, 11 N. Y. 392; *Town of Gallatin* v. *Loucks*, 21 Barb. 575.) The commissioners were not in any sense officers of the town. (*Horton* v. *Thompson*, 71 N. Y. 513; *Springport* v. *Teutonia Sav. Bk.*, 75 id. 406.) The maxim *delegatus non potest delegare* applies with full force to public officers charged by law with special duties. In matters involving personal trust and discretion they cannot employ agents. (*State* v. *Buffalo*, 2 Hill, 435; *Powell* v. *Tuttle*, 3 N. Y. 396; *Bd. of Excise* v. *Sockrider*, 35 id. 154; *Lewis* v. *Ingersoll*, 1 Keyes, 356.) The bonds are void in plaintiff's hands, not because he had actual notice, but because the commissioners could not bind the town. (*Alvord* v. *Syracuse Sav. Bk.*, 98 N. Y. 599; *Smith* v. *City of Williamsburgh*, 24 Barb. 427; *Marsh* v. *Fulton Co.*, 10 Wall. 676; *McClure* v. *Township of Oxford*, 94 U. S. 429.)

*D. M. Westfall* for respondent. All the provisions of the statute were fully complied with to duly authorize the commissioners to act for and bind the town under the statute. (44 Hun, 611.) The adjudication of the county judge itself establishes the existence and proper presentation of all the facts required to give jurisdiction. (*Bunstead* v. *Read*, 31

Barb. 668; *Sheldon* v. *Wright*, 5 N. Y. 514; *Dyckman* v. *Mayor, etc.*, Id. 440; *Skinnion* v. *Kelly*, 18 id. 356; *Porter* v. *Purdy*, 29 id. 110; *Ferguson* v. *Crawford*, 70 id. 265; *Roderigas* v. *E. R. S. Inst.*, 63 id. 464; *Craig* v. *Town of Andes*, 93 id. 410.) As to all matters within the purview of the statute, the acts of the commissioners, whether by themselves or by their direction, were the acts of the town. (*Horn* v. *Town of New Lots*, 83 N. Y. 101, 107; *Gould* v. *Town of Oneonta*, 71 id. 298.) The bonds involved in this action are valid, notwithstanding they are made payable less than thirty years from their date. (*Horton* v. *Town of Thompson*, 71 N. Y. 513; *Cagwin* v. *Town of Hancock*, 84 id. 532; *Town of Thompson* v. *Perine*, 23 Alb. L. Jour. 505; 103 U. S. 806; *Supervisors* v. *Schenck*, 5 Wall. 772; *State ex rel. Ross* v. *Anderson*, 8 Baxter, 249; *Whitney* v. *Town of Potter*, 18 Blatchf. C. C. 165; *Pendleton Co.* v. *Amy*, 13 Wall. 297; *Comrs.* v. *January*, 4 Otto, 202; *Irwin* v. *Town of Ontario*, 18 Blatchf. C. C. 259; *Singer Mfg. Co.* v. *Town of Elizabeth*, 42 N. J. L. 235, 257; *Rock Creek* v. *Strong*, 96 U. S. 271; *Oregon* v. *Jennings*, 119 id. 74; *Alvord* v. *S. S. Bank*, 98 N. Y. 600; *Peterson* v. *Mayor, etc.*, 17 id. 463; *Hoyt* v. *Thompson's Exrs.*, 19 id. 218.) Until the contrary appears the legal presumption is that all bonds were issued at their date, March 25, 1871. (*Seymour* v. *Van Slyck*, 8 Wend. 403, 414; *People* v. *Snyder*, 41 N. Y. 397, 402.) It is competent to show that the delivery was upon another day than the date. (*Van Rensselaer* v. *Vickey*, 3 Lans. 59; *Elsey* v. *Metcalf*, 1 Denio, 323, 326.) The bonds had no legal inception until they were delivered to some person as evidence of a subsisting debt. (Edw. on Bills [2d ed.] 175; *Cattin* v. *Gunter*, 11 N. Y. 368, 371; *Lansing* v. *Gayne*, 2 J. R. 301; *Marvin* v. *McCullum*, 20 id. 289; *Coddington* v. *Gilbert*, 17 N. Y. 489, 490; *Eastman* v. *Shaw*, 65 id. 527, 529; *Ahern* v. *Goodspeed*, 72 id. 108; *Angel* v. *Town of Hume*, 17 Hun, 374; *Syracuse Sav. Bk.* v. *Town of Seneca Falls*, 86 N. Y. 317, 321.) Even if the entire series of bonds (except Potter's) had been issued between May twelfth and July first, they could all

be sustained as valid in the hands of *bona fide* holders, being negotiable instruments issued under apparent authority. (*Stoney* v. *The Am. L. Ins. Co.*, 11 Paige, 635, 637; *North River Bk.* v. *Aymer*, 3 Hill, 270; *Mechanic's Bk.* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 611, 625; *F. and M. Bank of Kent Co.* v. *B. and D. Bk.*, 16 id. 129, 134, 135; *Gifford* v. *Town of White Plains*, 25 Hun, 606.) The bonds should be so construed, if possible, as will validate rather than invalidate them. (*Calhoun* v. *D. & M. R. R. Co.*, 28 Hun, 395; *Town of Solon* v. *W. S. Bank*, 35 id. 2; *Rich* v. *Town of Mentz*, 18 Fed. Rep. 157; *Alvord* v. *Syracuse Sav. Bk.*, 98 N. Y. 599; *Town of Aurora* v. *Auditor*, 15 Fed. Rep. 843; *Whitney* v. *Town of Potter*, 18 Blatchf. 165; *Miller* v. *Town of Berlin*, 13 id. 245; *Town of Orleans* v. *Platt*, 99 U. S. 676; *Co. of Tipton* v. *Locomotive Works*, 103 id. 523; *Walnut* v. *Wade*, Id. 683; *Menosha* v. *Hazard*, 102 id. 81; *Block* v. *Commissioners*, 99 id. 686; *Johnson Co.* v. *January*, 94 id. 202; *East Lincoln* v. *Davenport*, Id. 801; *Schuyler Co.* v. *Thomas*, 98 id. 169; *San Antonio* v. *Mahaffy*, 96 id. 312; *Town of Coloma* v. *Eaves*, 92 id. 484; *Hackett* v. *Ottawa*, 99 id. 86; *Weyzuwega* v. *Ayling*, Id. 112.) If the bonds are void for want of power in the commissioners to issue them in that form, then defendant is indebted to the plaintiff in the amount paid for them as for money loaned. (*D. D. Bk.* v. *A. L. Ins. and T. Co.*, 3 N. Y. 365, 368; *Schermerhorn* v. *Talman*, 14 id. 116, 117; *Coddington* v. *Gilbert*, 17 id. 289; *Eastman* v. *Shaw*, 65 id. 524, 527, 528, 530; *Ahern* v. *Goodspeed*, 72 id. 108; *Town of Solon* v. *W. S. Bk.*, 35 Hun, 1; *Louisianna* v. *Wood*, 102 U. S. 294; *Gould* v. *Town of Oneonta*, 71 N. Y. 298.) If the bonds are void and the transaction was not a loan to the town, then the plaintiff should recover as for money had and received. (*Chapman* v. *City of Brooklyn*, 40 N. Y. 380, 382; *Newman* v. *Supervisors of Livingston Co.*, 45 id. 687, 688; *Hathaway* v. *Town of Cincinnatus*, 62 id. 447; *Nelson* v. *Mayor, etc.*, 63 id. 544; *Horn* v. *Town of New Lots*, 83 id. 106, 107; *Gouse* v. *City of Clarksville*, 1 McCrary, 78; *Shirk* v. *Pulaski Co.*, 4 Dill.

209; *Louisianna* v. *Wood,* 102 U. S. 294; 5 Dill. 122; *Draper* v. *Springport,* 104 U. S. 501.) If the plaintiff cannot otherwise recover, equity demands a reformation of the bonds or the issuing of new and proper bonds. (4 Alb. Law J. 7; 6 id. 103; 36 id. 44, 45; *Pitcher* v. *T. P. R. Co.,* 10 Barb. 437; *Lansing* v. *Carpenter,* 48 N. Y. 412; *Pitcher* v. *Hennessey,* Id. 416, 424; *Stedwell* v. *Anderson,* 21 Conn. 139; *Champlin* v. *Laytin,* 18 Wend. 418, 419; *Boyd* v. *De La Montague,* 73 N. Y. 498, 503; *Martin* v. *McCormick,* 8 id. 331.) The fact that the commissioners acted through a broker or agent constitutes no defense. (*Mayor, etc.,* v. *Sands,* 105 N. Y. 210, 217; *Lewis* v. *Ingersoll,* 1 Keyes, 347; *Calhoun* v. *D. & M. R. Co.,* 28 Hun, 398, 402; *Hathaway* v. *Town of Cincinnatus,* 62 N. Y. 434, 447; *Town of Lyons* v. *Chamberlain,* 89 id. 591, 592; *Gould* v. *Town of Oneonta,* 71 id. 308; *People ex rel. D., etc.* v. *Batchellor,* 53 id. 141; *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn,* 71 id. 584; *Lloyd* v. *Mayor, etc.,* 5 id. 374, 375; *State ex rel. Ross* v. *Anderson,* 8 Baxter, 249; *Whitney* v. *Town of Potter,* 18 Blatchf. 165; *Peterson* v. *Mayor, etc.,* 17 N. Y. 453; *Hoyt* v. *Thompson,* 19 id. 218; *Town of Solon* v. *W. S. Bk.,* 35 Hun, 15; *Horn* v. *Town of New Lots,* 83 N. Y. 101, 107.) The statute of limitations cannot avail as a defense. (*Town of Solon* v. *Williamsburgh Sav. Bk.,* 35 Hun, 10; *People ex rel. D., etc.,* v. *Batchellor,* 53 N. Y. 141; *Corkings* v. *State,* 99 id. 492, 499; *Bartlett* v. *Judd,* 21 id. 200, 205.)

VANN, J. By the bonding act of 1869 the defendant was transformed from a mere political division of the state, with limited corporate powers, into a municipal corporation with power to borrow money on an extensive scale and to invest it in the stock or bonds of such railroad company as a majority of its taxpayers, representing a majority of its taxable property, should designate. (Laws of 1869, chap. 907, p. 2303; *Horn* v. *Town of New Lots,* 83 N. Y. 100, 107.) Those powers, however, remained dormant and wholly ineffectual for any purpose, unless they were called into action by the determination

of the county judge, based upon such proceedings as the statute requires. The first question to be decided, therefore, is whether the adjudication of the county judge was valid and binding upon the town, so as to bring into operation these new and important powers conferred by the statute under consideration. The parties admit that the county judge "duly adjudged, determined and ordered," the jurisdictional facts being first recited, that the allegations of the petition are substantiated, and that the petitioners represent a majority of the taxpayers and a majority of the taxable property of the town according to the last assessment-roll. They further admit that the county judge duly appointed and commissioned the commissioners, who accepted, qualified and acted. The statute authorized the county judge to so " adjudge and determine ". only in case it had been in all things complied with. (Laws of 1869, chap. 907, § 2.) How, then, could he "duly" adjudge unless every step required had been taken? "Duly," in legal parlance, means according to law. (*Gibson* v. *People*, 5 Hun, 542, 543; *People ex rel. Hawes* v. *Walker*, 23 Barb. 304; *Fryatt* v. *Lindo*, 3 Ed. Ch. 239; *Burns* v. *People*, 59 Barb. 531, 543; *Webb* v. *Bidwell*, 15 Minn. 479, 484.) It does not relate to form merely, but includes form and substance both. The expression " duly adjudged, " as used in the statement for the submission of this controversy, therefore, means adjudged according to law, that is, according to the statute governing the subject, and implies the existence of every fact essential to perfect regularity of procedure, and to confer jurisdiction both of the subject-matter and of the parties affected by the judgment, including the defendant. A judicial officer has jurisdiction, when he has power to inquire into the facts, to apply the law and to pronounce the judgment. Any step in the cause or proceeding before him is necessarily the exercise of jurisdiction, and that step cannot be " duly " taken unless jurisdiction exists. The final step, in particular, the making of the judgment, cannot be "duly" taken unless all of the preliminary steps upon which it is based have likewise been duly taken.

We also think that the rule of pleading facts prescribed by

section 532 of the Code of Civil Procedure may with propriety be applied to the statement of facts required by section 1279; and that whatever is a sufficient statement of the facts, according to the former, to impliedly allege jurisdiction, is a sufficient statement of the fact, according to the latter, that jurisdiction existed. (*Rockwell* v. *Merwin*, 45 N. Y. 166.) There is no reason for greater particularity in admitting facts for the submission of a controversy than in alleging them in a pleading.

The same reasoning applies with equal force to the admission that the commissioners were duly appointed and commissioned. This means that they were appointed by due authority or by the authority of law. According to the statute, the county judge had no authority to appoint them until he had adjudged and determined, in the manner and upon the proofs required, whether a majority of the taxpayers and taxable property were in favor of bonding. (Laws of 1869, p. 2305, § 3.)

The persons appointed, therefore, became commissioners of the town *de jure*, empowered to represent and to act for the town. (Id.) They were authorized to execute and issue "the bonds of such municipal corporation" and to affix "the seal of such corporation" thereto (§ 4); "to subscribe (for railroad bonds or stock) in the name of the municipal corporation which they represent;" "to represent either in person or by proxy such municipal corporation at all meetings of the railroad bondholders or stockholders;" to "vote for directors on the stock of such town" (§ 5); to provide a sinking fund to pay the bonds of the town, and under certain circumstances to sell the railroad stock or bonds belonging to the town. (§ 6.) The acts of the commissioners, as to all matters within the scope of the authority conferred upon them by the statute, were the acts of the town. (*Gould* v. *Town of Oneonta*, 71 N. Y. 298.) Hence, irregularities in the manner in which the commissioners may have performed their duties cannot affect the validity of the bonds issued in the hands of an innocent holder for value. (*Town of Solon* v. *Williamsburgh Savings Bank*, ante, p. 122.)

It was not necessary that merely executive acts, not involv-

ing the exercise of discretion, should be done by the commissioners personally, but such acts might be done by another under their direction. (*Mayor* v. *Sands*, 105 N. Y. 210, 217.) "When a statute commands an act to be done, it authorizes all that is necessary for its performance." (Sedgwick's Const. and Stat. Laws, 245.) Hence the commissioners could lawfully employ Mr. Andrews as a broker to sell the bonds and invest the proceeds according to their instructions.

The plaintiff, therefore, when he paid his money for the bonds in question, paid it to the town, and the town received it and invested it in railroad bonds, which it is presumed to still hold, and which, in the absence of proof to the contrary, are presumed to be of value. The defendant received all that it contracted for, but what did the plaintiff receive? The defendant contends that he received nothing of any value, because, as it claims, the bonds delivered to him by the commissioners or by their direction are void, inasmuch as they were made payable in twenty years, while the bonding act of 1869 (§ 4), only authorized the issue of bonds "payable at the expiration of thirty years from their date." On the 12th of May, 1871, an act was passed by the legislature amending section 4 of the bonding act "by adding at the end thereof," the following provision : "The said commissioners may issue the said bonds payable at any time they may elect less than thirty years, * * * but they shall not so issue the bonds that more than ten per cent of the principal of the whole amount of bonds issued shall become due or payable in any one year." (Laws of 1871, chap. 925, § 6, p. 2119.) The question now arises whether the bonds of the plaintiff were actually issued before or after May 12, 1871, the date when said amendment took effect. They bear the date of March 25, 1871, and are presumed to have been executed at that time ; but executing is not issuing, for they might be fully executed but never issued. It is clear that the purchaser of a bond from the obligor named therein simply lends the latter money. (*Coddington* v. *Gilbert*, 17 N. Y. 489 ; *Ahern* v.

*Goodspeed*, 72 id. 108.) The essence of the original transaction between the parties, therefore, was a loan of money secured by the bonds of the borrower. The bonds had no legal inception and could not become valid obligations, aside from any other question, until actually delivered for a valuable consideration. Under the circumstances, we think that the delivery of the bonds to the plaintiff determines the date when his bonds were issued. In this vital respect the case differs from *Potter* v. *Town of Greenwich* (92 N. Y. 662; 26 Hun, 326), where the bonds were issued prior to the passage of the act of May 12, 1871. The plaintiff in that case bought his bonds in April of that year. The five bonds in question, therefore, were issued on the first of July, 1871, when they were first delivered as evidence of an existing debt. The plaintiff had the right to assume that they were issued under the statute as it stood at the date of the delivery, for he was dealing with actual commissioners, clothed with all the authority that the statute conferred. The mere inspection of his bonds would show that *they* were made payable as the statute then required. It does not appear that he had seen any of the bonds except those which he purchased, or that he knew that all of the bonds were payable at the same time, or even that any other bonds had been issued at the date of his purchase. He was not bound to examine the entire series to see that no more became due in a single year than the statute permitted. He was bound to examine his own bonds and was, doubtless, charged with knowledge of the bonding act and the bonding roll, as the one was a public statute and the other a public record, and both were accessible to all. How could he examine the remaining bonds? If they were not then issued, but still in the hands of the commissioners, an examination would be useless, for a purchaser of bonds issued according to law cannot be affected by the subsequent acts of the commissioners in issuing other bonds in a manner not in accordance with law. If they were issued, how could he find them, scattered in the hands of unknown owners? It would be unreasonable to charge him with knowledge of the contents of the rest

of the bonds, or to declare his bonds void, because the others, of which he knew nothing and had no means of knowing, were, in fact, made payable at a time not authorized by the statute. A purchaser, under the circumstances disclosed, might assume that the defendant, through its lawfully appointed commissioners, would not do an act utterly void, and thereby commit a fraud upon one of its citizens by taking his money without any consideration.

The only other claim of the appellant that we deem it important to notice is, that the act of 1871 does not apply to bonds issued in pursuance of a consent of taxpayers given and adjudicated upon before that statute was passed, and that if the act can be construed as applying to such bonds, it is, to that extent, unconstitutional and void. In *Syracuse Savings Bank* v. *Town of Seneca Falls* (86 N. Y. 317), it was held that the act of 1871 applied to proceedings regularly taken prior to its passage. In that case the proceedings were terminated in August, 1870, when the county judge made the adjudication and record and appointed the commissioners, who delayed action until after May 12, 1871, when they subscribed for stock and issued the bonds. No further consent of the taxpayers was obtained. In *Angel* v. *Town of Hume* (17 Hun, 374), the adjudication was made April 22, 1871, and the bonds were issued in February and July, 1872. In both of these cases it was held that the judgment of the county judge, based solely upon the consent of the taxpayers to bond pursuant to the act of 1869, was not nullified nor avoided by the amendment of 1871. In neither of those cases had any taxpayer consented to such an issue of bonds as the amended act gave the commissioners the discretion to issue.

In *Gould* v. *Town of Sterling* (23 N. Y. 456), the consents were obtained prior to September 29, 1852 (pp. 443, 445), while the bonds were issued in August, 1853 (p. 457). In the meantime an act had been passed authorizing the interest upon the bonds to be made payable on the first days of January and July of each year, instead of March first as was provided by the original bonding act.

The only authorities cited to sustain the position that the act of 1871 is unconstitutional are *People* v. *Batchellor* (53 N. Y. 128), and *Horton* v. *Town of Thompson* (71 id. 513). We do not consider either of them applicable to this case. The only constitutional questions involved in these cases were, in the former, whether the legislature could compel a town to become a stockholder in a railroad corporation by exchanging its bonds for stock without its consent in any way given; and, in the latter, whether the legislature could make a void bond valid after it had been actually issued to a person who could not claim as a *bona fide* holder.

In the case under consideration the consents had been duly given and an adjudication duly made to that effect when the amendatory act was passed. There was no want of power, therefore, to issue bonds, as the conditions precedent had all been complied with. The amendment did not extend to matters of jurisdiction, " but to that which the legislature might have dispensed with the necessity of by the prior statute." The bonding act would not have conflicted with the Constitution if it had contained no provision as to when the bonds should be made payable, but had left that to the discretion of the commissioners. That provision, therefore, so far as the Constitution is concerned, was immaterial and could be modified, even retrospectively, at the discretion of the law-making power.

In *Williams* v. *Town of Duanesburg* (66 N. Y. 137), the court said: " In this case the legislature could originally have authorized the bonds of the town * * * to be issued under the precise circumstances existing when they were issued;. and if the acts of the commissioners have, by subsequent legislation, been ratified, it is equivalent to an original authority to do what has been done. The authorities as to the legislative power to validate, by subsequent legislation, acts done in assumed execution of a statute authority which has not been strictly followed, are numerous and decisive." (*People* v. *Mitchell,* 35 N. Y. 551; *Town of Duanesburg* v. *Jenkins,* 57 id. 177; *People ex rel Kilmer* v. *McDonald,* 69 id. 362;.

*Tifft* v. *City of Buffalo*, 82 id. 204; *Rogers* v. *Stephens*, 86 id. 623.) If the legislature has power, after bonds have been issued, to correct irregularities of official action without affecting the consents of the taxpayers previously given, its power to authorize a change in the form of the bond before it is actually issued, without impairing such consents, cannot well be denie

Without examining any of the other grounds upon which we are urged to affirm the judgment appealed from, we think that it should be affirmed for the reasons already stated.

PARKER, J. By the act of May 12, 1871, the commissioners were authorized to issue bonds, payable in twenty years, aggregating in amount $4,000. So much of the issue as was in excess of $4,000 was without authority of law and void. But the subsequent unauthorized action of the commissioners in issuing bonds of the town could not, and did not, invalidate or affect the bonds aggregating $4,000, for which act authorizations had been duly given.

The commissioners sold to this plaintiff bonds of the face value of $2,500, $1,500 less in amount than the authorized issue. It does not appear that after the passage of the act mentioned, and prior to the sale made to the plaintiff, the commissioners sold any other bonds. We are unable to say from the evidence before us that plaintiff's bonds were not issued to him before the limit of $4,000 was exceeded.

The plaintiff then seeks to recover upon bonds regular upon their face, and in an amount less than the issue permitted by statute. The defendant attacks their validity upon the ground, among others, that the commissioners exceeded their authority by issuing more bonds payable in twenty years than the statute permitted. The burden, therefore, rested upon the defendant to establish such defense. It was incumbent upon it to show that plaintiff's bonds did not constitute a portion of the authorized issue of $4,000. This it omitted to do, and, as a necessary consequence, failed to establish the defense interposed.

These views lead me to concur in the result arrived at by Judge VANN.

BRADLEY, J., concurs in the result on the ground that the bonds in question were issued after the act of May 12, 1871 (chap. 925), took effect, and that it may be presumed, nothing appearing to the contrary, that those bonds, at the time of their issue, did not make the amount issued, after such act took effect, exceed $4,000.

BROWN, J. (dissenting). I dissent upon the ground that the taxpayers of the defendant never gave their consent to the issuing of bonds payable in twenty years. Such consent was essential to the validity of the instruments. The proceedings before the county judge, which terminated in the appointment of commissioners, were taken by authority of the act of the legislature of May 18, 1869, and authorized the issuing of bonds running for thirty years. The bonds in suit recite that they were issued by authority of that act. They bear date and were executed before the passage of the act of May 12, 1871. They are void upon their face. (*Potter* v. *Town of Greenwich*, 26 Hun, 326; affirmed, 92 N. Y. 662.) And were not, in my judgment, made valid by the act of the legislature last cited. The shortening of the period of payment deprived the taxpayers of the town of substantial benefits under the statute intended to provide for the payment of the bonds, and is more than a mere irregularity.

The legislature had no power to authorize a loan by the town to the railroad company without its consent (*People* v. *Batchellor*, 53 N. Y. 128; *Horton* v. *Town of Thompson*, 71 id. 513); and the act of May 12, 1871, cannot be construed as applicable to bonds executed pursuant to consents given before its passage, and which related to entirely different obligations.

For these reasons, I think, the judgment should be reversed.

All concur for affirmance, except BROWN, J., dissenting; POTTER, J., not sitting; BRADLEY and PARKER, JJ., concurring in result.

Judgment affirmed.