ROBERT ARMSTRONG, JR., Appellant, *v.* THE VILLAGE OF FORT EDWARD, Respondent.

| 84 261 |
| 159a 315 |

*Municipal corporation — powers thereof — employment of brokers to negotiate a sale of its bonds — duties that cannot be delegated to third persons.*

A municipal corporation possesses and can exercise the following powers and no others, viz. : Those granted in express words; those necessarily or fairly implied in or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.

A municipal corporation in issuing bonds has the right, as an incident to such power (and in fact in a business sense it may be said to be necessary to the exercise of such power), to use the customary and ordinary business agencies in negotiating or selling its bonds, to place them in the hands of bond brokers or bankers, who make a business of dealing in such securities, and who have greater facilities than the municipality for the disposal of such bonds, and to pay such persons the ordinary commissions upon the sale of such securities;

but duties, the performance of which is peculiarly within the power of municipal officers, cannot be delegated to a third person, not an officer of the municipality, nor can such third person be authorized to perform such duties at the expense of the municipality.

PUTNAM, J., dissenting.

APPEAL by the plaintiff, Robert Armstrong, Jr., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Washington on the 11th day of May, 1894, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the Washington Circuit.

*R. Armstrong, Jr.,* and *A. D. Wait,* for the appellant.

*R. O. Bascom,* for the respondent.

HERRICK, J. :

The defendant, by its board of water commissioners, entered into a contract for the erection of water works.

The board of water commissioners, for the purpose of paying the contractor for the construction of such water works, had authorized the execution and sale of bonds of the defendant to raise the requisite money. Owing to the stringency of the money market during the summer of 1893, they experienced difficulty in making sales of such bonds. Money was falling due to the contractor and the defendant had no means to make the necessary payments.

At a meeting of the board of water commissioners, dated June 16, 1893, the following resolution was adopted : " *Resolved,* that the President, with our counsel, Mr. Hull, with others that he or they may select, be a committee to see the Comptroller and others in regard to the sale of bonds."

The president waited upon plaintiff and requested him to act as a member of such committee, and it appears that Mr. Hull informed the plaintiff that, " If you will take hold and help, you will be paid for your services." Thereafter the plaintiff acted with such committee, and spent some considerable time in seeing different persons in endeavoring to make a sale of such bonds; he called upon the Comptroller upon several occasions, and upon others who he thought would have influence with the Comptroller to induce him to purchase the bonds. The Comptroller finally purchased bonds to the amount of $78,000.

The plaintiff presented a bill to the water commissioners for the sum of $1,200 for his services; this the board refused to pay, but finally passed a resolution as follows:

"*Resolved*, that for the purposes of settlement of all claims for services rendered by Robert Armstrong, Jr., that we pay him the sum of $25 per day for 18 days' services, this to be in full for all claims and demands to date. November 13, 1893."

With the exception of the plaintiff's testimony that at the time he was asked to serve upon the committee Mr. Hull told him that he would be paid for his services, there is no evidence in the case that the board of water commissioners ever authorized his employment for compensation, except as such employment for compensation may be implied from the evidence in the case; that after he had consented to act and was acting as a member of such committee he appeared before the board of water commissioners in reference to a report that a man named Cantwell had an option upon the purchase of said bonds for the period of sixty days; the plaintiff, desiring to know if such report was true, saying: "That if they had placed the bonds in any other broker's hands, I did not choose to serve the Board any more in the capacity of trying to place the bonds, for at the end of it there would be difficulty about my pay." And again, saying that if they felt bound by anything that had passed between themselves and Mr. Cantwell, that he did not care to go on, because when it came to a settlement for his pay there would be trouble about it.

Upon granting the motion for a nonsuit the trial court adverted to the character of the services rendered by the plaintiff, and held that they were not of such character as entitled the plaintiff to compensation.

I have not thought it necessary in the view that I take of this case to particularize more specifically than I have done the nature of the services rendered by the plaintiff because back of the services actually rendered comes the question as to whether the defendant, through its board of water commissioners, had the power to employ for compensation any person to render services of the kind I have described, and if they had such power, whether the defendant did in fact enter into a contract with the plaintiff to pay him for such services.

The question as to whether a citizen of a municipality called upon and consenting to act at the request of, and in conjunction with, that municipality's officers, in performing a public service, is entitled to compensation therefor, will not be considered, for the reason that it is apparent that the plaintiff was given to understand at the time he was solicited to act that he would be paid for his services.

While the action of Mr. Hull, in informing the plaintiff that he would be paid for his services, was without authority and was not binding upon the defendant, I will assume that the subsequent action of the board of water commissioners, at the time the plaintiff appeared before them and spoke in reference to their rumored agreement with Mr. Cantwell, during which conversation the plaintiff referred to such arrangement as being one that would interfere with his pay or compensation, thus giving them to understand that he expected compensation for his services, constituted by their silence and apparent acquiescence therein and continued employment an implied contract on their part to pay him for such services.

Assuming, then, that there was an agreement on the part of the defendant, through its board of water commissioners, to employ the plaintiff for compensation, the question arises, did they possess the power to do so?

The defendant is a municipal corporation. I do not know any better or more generally accepted definition of the powers of municipal corporations than that given by Dillon in his work on Municipal Corporations (§ 89, 3d ed.): "A municipal corporation possesses and can exercise the following powers, *and no others*: *First*, those granted in *express words; second*, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; *third*, those *essential* to the declared objects and purposes of the corporation — not simply convenient, but indispensable."

The powers vested in the defendant upon the subject now under consideration are those granted to its board of water commissioners by chapter 181 of the Laws of 1875, and the various acts amendatory thereof. The only powers of employment granted to such board are those contained in section 4: "It shall be the duty of the commissioners to examine and consider all matters relating to supplying the village with pure and wholesome water, and for that purpose they shall have power to employ engineers, surveyors and such other persons as shall be necessary for that purpose."

That is the only express grant of power to employ persons that has been made by the Legislature, and under that it will not be contended that there was any authority to employ the plaintiff for the services in question here.

Under section 8 of said act the water commissioners are authorized to borrow money and to execute and deliver bonds to secure the payment of the money so borrowed.

Under the second definition given by Dillon, they would have the power and authority to do those things that were "necessary or fairly implied in or incident to" the power granted to borrow money and issue bonds to secure the payment thereof.

I think it may be fairly implied that municipal authorities in issuing bonds have the right as an incident to such power, and in fact in a business sense it may be said to be necessary to the exercise of such power, to use the customary and ordinary business agencies in negotiating or selling their bonds, as, for instance, to place them in the hands of bond brokers or bankers, who make a business of dealing in such securities, and who have greater facilities for disposing of them, as was done in the case of *Brownell* v. *Town of Greenwich* (114 N. Y. 519), and to pay such persons the ordinary commission upon the sale of such securities.

When a municipal corporation is authorized to borrow money, it goes into the money market as a private individual, or a business corporation, and to negotiate its loans to advantage it may make use of the ordinary business agencies to procure the needed money and float its securities.

But the case we have before us is not such a case; the plaintiff is not a banker or a broker, or a person engaged in dealing in securities, but is a practicing lawyer.

He was engaged to do those things which the officers of the defendant were elected to do, and could do. His employment for the services in question was neither "necessary" nor "essential" to aid them in floating the bonds. His employment was "convenient," but not "indispensable." The resolution under which he was employed, "that the President, with our counsel, Mr. Hull, with others that he or they may select, be a committee to see the Comptroller and others in regard to the sale of bonds," does not indicate or contemplate the rendition of services other than those that

devolved upon the officers of the defendant, or services which they could not perform.

The services that were rendered, as testified to upon the trial, consisted mainly in importuning the Comptroller to invest a portion of the State funds in his hands in the bonds of the defendant, and the importuning of personal and political friends of the Comptroller to use their influence to induce him to do so; although the plaintiff and his associates did call upon some bankers and others to induce them to purchase the bonds, all these services were services that could just as well have been performed by the officers of the municipality as by any one else.

The attorney of the defendant, the president of the water commission and the other members of the committee would seem to be persons peculiarly adapted to state the nature of the securities they offered, the proceedings of the defendant in issuing them, and the necessities of the village to secure their prompt negotiation, which were the main things that seem to have been considered and pressed upon the Comptroller and others in attempting their sale.

It seems to me that duties which are peculiarly within the power of municipal officers to perform they have no right, under the doctrine of implied or incidental powers, to devolve upon a third person, not an officer of the municipality, or authorize such person to perform such duties at the expense of such municipality.

For these reasons I think that the employment of the plaintiff to perform the services in question for compensation was beyond the power of the defendant, and that, therefore, the judgment of nonsuit was proper.

Let the judgment be affirmed, with costs.

MAYHAM, P. J., concurred.

PUTNAM, J. (dissenting):

Plaintiff performed valuable services for defendant, both parties expecting that he was to receive compensation therefor. I think he should be allowed to recover what the services were worth. The defendant's water commissioners, in the disposal of its bonds, were authorized to do all things necessary to be done in the performance of their duty. (Sedgwick Const. & Stat. Law, 245; *Mayor, etc., of New York* v. *Sands*, 105 N. Y. 210–218; *Brownell* v. *Town of*

*Greenwich*, 114 id. 518–529.) They could employ plaintiff or any other person as a broker to sell the bonds. They could as well employ him as a broker in New York or Albany. Nor, in my opinion, did it make any difference that plaintiff was a lawyer; that his regular business was not that of a broker. In the sale of defendant's bonds he acted as a broker, and I am unable to see why defendant's commissioners were not as much authorized to employ him as the commissioners in *Brownell* v. *The Town of Greenwich* (*supra*) were authorized to employ Andrews (a banker), or the Comptroller, in *Mayor, etc., of New York* v. *Sands*, to employ Sands as officer of the city.

The fact that plaintiff was a citizen of Fort Edward, and was named as one of a committee, does not interfere with his right to recover, the evidence showing that the services in question were rendered with the understanding that he was to be paid therefor. (*Mayor, etc., of New York* v. *Sands, supra; Gould* v. *Board of Education*, 34 Hun, 16; *Batchelder* v. *Epping*, 28 N. H. 354.)

I am, therefore, unable to concur in the opinion of the majority of the court.

Judgment affirmed, with costs.