VAN BRUNT, P. J.  I dissent.  The amendment was a change in the decision in a substantial respect; and if such an amendment can be allowed, then any error in a decision may be remedied after judgment.

(60 App. Div. 225.)

### CITIZENS' SAV. BANK v. TOWN OF GREENBURGH.

(Supreme Court, Appellate Division, First Department.  April 29, 1901.)

TOWNS—BONDS—ISSUE—VALIDITY—BONA FIDE PURCHASER.

  Defendant town issued interest-bearing bonds, and delivered them to commissioners appointed by the supreme court, who were authorized by Laws 1892, c. 493, § 6, to sell such bonds for cash at not less than par. The commissioners sold the bonds for their face value to C., partly on credit, and without taking into account accrued interest. *Held*, that the action of the commissioners was in excess of their authority, and the bonds were void, and unenforceable by a bona fide holder for value from C.

Appeal from trial term, New York county.

Action by the Citizens' Savings Bank against the town of Greenburgh.  From a judgment dismissing the complaint (65 N. Y. Supp. 554), plaintiff appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

William B. Hornblower, for appellant.
J. Rider Cady, for respondent.

PATTERSON, J.  This was an action at law to recover interest upon certain bonds purporting to have been issued by the town of Greenburgh, in Westchester county, in the state of New York.  The plaintiff claimed to be the holder and owner for value of the bonds, and that they are negotiable instruments.  The defendant claimed, in substance, that the bonds were issued without authority, were wrongfully, illegally, and fraudulently put in circulation, and that it never became liable for nor bound to pay any part of them, or interest thereon; that they are void as obligations of the defendant; and that the plaintiff could not and did not acquire such rights as would entitle it to recover as a bona fide holder for value.  On the trial, at the conclusion of the proofs, the plaintiff moved for a direction of a verdict, which motion was denied, and an exception duly taken.  The defendant thereupon moved for the dismissal of the complaint, which motion was granted, and an exception duly taken.  From the judgment entered the plaintiff now appeals.

In dismissing the complaint the court held that the bonds never had any legal inception, and were not enforceable against the defendant; that they were issued in excess of the authority of the persons by whom they were put in circulation.  There are other issues involved in the case, but it is not important to refer to them in view of the conclusion we have reached that the ruling of the trial judge upon the point on which his determination was based was correct under the adjudications of the courts of the state of New York upon the subject.  It appeared in evidence that under the provisions of chapter

493 of the Laws of 1892 authority was given to 12 or more freehold-ers residing in any county of the state to present a petition to the supreme court stating that it was necessary for the public welfare and convenience that a highway in any one town in such county should be continued along and through another town in the same county. Upon receipt of the petition the court to which it was presented was required to consider the facts alleged, and, if satisfied that the highway was necessary for the public welfare and convenience, and that its continuance and construction would afford a nearer route between two populous points in two towns than by any existing highway, then the court might make an order, after notice of a certain character, appointing commissioners, whose duty it should be to proceed with due diligence to continue, lay out, open, and construct such highway between terminal points, and to construct a bridge over any ravine or stream of water to be crossed by the highway; and, among other things, the commissioners were given power to enter upon lands required for the purpose of executing the powers and duties conferred and enjoined upon them, giving due notice to the owners of such lands of certain requirements; the commissioners having power to make contracts for grading and the construction of the road under certain conditions. The act also provides as follows:

"Sec. 6. The said commissioners shall ascertain and determine the cost, charges and expense of laying out and opening, constructing and grading the said road and the amount of damages awarded to owners or occupants of property through which the same shall have been laid out for the lands taken, and the amount as so ascertained shall be paid by the town through which said road was continued and constructed and said lands taken. The bonds or obligations of each of said towns for the proportion of such damages, costs, charges or expense so charged to them shall be issued by each of said towns in such sums as are deemed advisable by the respective supervisors thereof, and shall be payable in twenty years from the date thereof. Such bonds shall bear interest at the rate of four per centum per annum, and the bonds of each town shall be executed by the supervisors and town clerk thereof and delivered to the said commissioners to be paid out by them at not less than par in liquidation of the said damages, costs, charges and expenses of laying out, opening and constructing the said road, or at their option to be sold at not less than par and the proceeds thereof applied as aforesaid."

A petition in due form was presented to the supreme court in West-chester county, and an order was made appointing commissioners, who proceeded to construct the road or highway authorized by the act of the legislature. It appears that they called upon the proper officials of the town of Greenburgh to deliver bonds to them as required by section 6 of the act referred to. Thereupon 149 bonds for $1,000 each were executed by such town officers,—a part thereof on the 1st of May, 1893, and another part on April 16, 1894,—and such bonds were delivered to the commissioners, who retained possession of all of them until April 23, 1894. On the last-mentioned date those commissioners made a contract with Coffin & Stanton, a firm of brokers in the city of New York, under which they disposed of the whole issue of bonds at their face value of $149,000, thereby relinquishing about $700 of interest that had accrued upon such bonds. This transaction was not a sale of the bonds for cash, but was partly for cash and partly upon credit. They received $69,000 in cash and no more,

taking, as one of the commissioners swears, collateral for the balance; and that collateral consisted of "bonds of some of the towns of New York state and some from the West; different other bonds." This collateral was evidently held until some time in 1895, when the commissioners went out of office, and then was handed over to their successors. Coffin & Stanton, having possession of the bonds, in 1894 borrowed from the plaintiff the sum of $152,000, and pledged as security for the loan, among other things, some of the bonds now in suit. Payments were made upon the loan from time to time until November 26, 1894, when there remained a balance due the plaintiff from Coffin & Stanton of $49,000. The plaintiff then held as collateral $51,000 of the bonds of the town of Greenburgh, being the aggregate of principal of the 51 bonds to recover interest upon which this action is brought. Coffin & Stanton failed in business, and a receiver of the property and effects of that firm was appointed by the circuit court of the United States for the Southern district of New York, and such receiver, by an instrument duly executed under seal, released to the plaintiff all interest or equity in the 51 bonds, and assigned, transferred, and set over to the plaintiff all his right, title, and interest and all the right, title, and interest of the firm of Coffin & Stanton in and to the said bonds; the plaintiff thereby becoming the absolute owner, instead of a mere pledgee, of such bonds. Evidence of the transaction between the commissioners and Coffin & Stanton was properly admitted. We have no doubt that the bonds were void in the hands of that firm. The act of the commissioners in delivering them was not a mere irregularity. It transcended their powers under the statute. The bonds could be used by the commissioners only to be paid out at not less than par in liquidation of damages, costs, charges, and expenses of laying out, opening, and constructing the road, or by sale at not less than par, and the proceeds thereof applied as required by the law. This was a distinct limitation upon the power of the commissioners to issue the bonds, and any person dealing with them was bound to take notice of that limitation. The question then arises whether, by negotiation of those bonds, and their passing into the hands of a purchaser for value, that purchaser is protected by the rule applicable to bona fide holders of negotiable paper. That the affirmative of the proposition as contended for by the plaintiff is supported by some decisions in the United States courts cannot be questioned; but the decisions of the courts of the state of New York, which were followed by the judge who decided this cause at the trial term, hold a contrary doctrine. The learned counsel for the appellant insists, however, that the court below has misapprehended the effect of the decisions of the courts of this state upon the subject, and has argued that a proper understanding of those decisions would lead to the establishment of his proposition. We are referred particularly to the case of Illinois v. Delafield, 8 Paige, 527; Id., 2 Hill, 159. That case is undoubted authority for two propositions: First, that, where the agents of a state are authorized to sell its bonds or public stocks at not less than their par value, a sale at the face value without interest accrued is a sale for less than par value, and unauthorized; and, secondly, that a sale of such bonds or stocks on credit, unless special

authority is conferred, is also unauthorized. That was a case in which an injunction was prayed for by the state of Illinois to prevent its agent in the city of New York from parting with certain state bonds, and the injunction was allowed upon the ground that, if the bonds were put into circulation by the agent, those who became possessed of them for value might acquire the rights of bona fide holders of negotiable instruments. If this case can be regarded as an authority in support of the plaintiff's contention, subsequent adjudications of the courts of this state relating specifically to town bonds have established a different principle. They seem to proceed upon the theory that, inasmuch as towns have no right to issue obligations that would burden taxpayers unless it be under statutory authority, whosoever undertakes to deal with such bonds is bound to ascertain the extent of the authority and the statutory right of the town, or of those who are acting for it, to make an issue of bonds.

We cannot avoid the conclusion that the bonds in suit were issued without authority. Here the difficulty is not in the irregular exercise of power, but in the creation of the power itself. The elected officials of the town who executed these bonds could not directly issue or put them on the market. Their power was confined to delivering them to the commissioners. The only power the commissioners acquired in respect of the bonds was the very restricted one of disposing of them in a specified manner, viz. to pay them out at not less than par for damages, or to sell them at not less than par. They were not general agents of the town, nor special agents beyond the limited scope of their particularly defined authority. Unless they received par they had no authority to part with the bonds; and we think the learned judge below was right in the view he expressed, that the limitation upon the sale "was of the essence of the power itself, which never had any existence in any less restrictive sense." The commissioners had no power to dispose of them contrary to the limitation imposed by the terms of section 6 of the act. If, as we conceive to be the case, there was no authority to issue the bonds, then, as the learned judge at trial term states in his opinion, it has been decided (Cagwin v. Town of Hancock, 84 N. Y. 532) "that there can be no bona fide holders of bonds within the meaning of the law applicable to negotiable paper which has been issued without authority." This is not a dictum only. As said in the case cited: "Such is the law as laid down in this state. Town of Venice v. Woodruff, 62 N. Y. 463; Starin v. Town of Genoa, 23 N. Y. 439; People v. Mead, 36 N. Y. 224." The learned judge who decided this cause has pointed out in his opinion that the case of Brownell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685, is not in conflict with the Cagwin Case. Irregularities only in the manner in which commissioners may have performed their duties do not affect the validity of the bonds in the hands of an innocent holder for value. Town of Solon v. Williamsburgh Sav. Bank, 114 N. Y. 122, 21 N. E. 168. It is just at this point we conceive the infirmity to exist in the plaintiff's contention. As said before, the commissioners' act in issuing the bonds to Coffin & Stanton was not a mere irregularity. They were so issued contrary to and in defiance of the limitation put upon their authority to de-

liver the bonds, for their agency did not extend beyond the scope of the authority given by section 6 of the act. In Brownell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685, and Hoag v. Same, 133 N. Y. 154, 30 N. E. 842, it was substantially held that mere irregularities would not affect the validity of bonds in the hands of an innocent holder for value. But, as we construe section 6 of the act, the commissioners had no power to issue these bonds, except in strict accordance with the terms of that section. The learned trial judge treated the case as one of want of power or authority in the commissioners, and not as an irregular exercise of authority granted, and in that view we concur. If the bonds were void in the hands of Coffin & Stanton, they could not make them valid by negotiating them, any more than could any other municipal obligations issued in violation of statutory, or even constitutional, authority be made valid. If we are right in holding that it was beyond the power of the commissioners to issue these bonds as they did, and that their act was not a mere irregularity, it follows that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and RUMSEY and McLAUGHLIN, JJ. We concur. If bonds issued in violation of law can become enforceable because bought without notice, then all constitutional and statutory restrictions are nugatory.