In the Matter of FRANK T. SAGE et al., Respondents, *v.* THOMAS E. BRODERICK et al., Constituting the Town Board of the Town of Irondequoit, Appellants.

(Argued October 21, 1930; decided November 18, 1930.)

*John Van Voorhis* for appellants. The agreement violates section 9 of the General Municipal Law requiring municipal bonds to be sold at public sale after advertisement to the highest bidder. An underwriting agreement made in advance of any public offering is not authorized and is, in effect, a contract for a private sale at a discount to the underwriter contingent upon the bonds not being bid in by others. This gives to the underwriter an advantage over other competitors, frustrating the purpose of the statute. (2 Dillon on Mun. Corp. § 895; *Roberts & Co.* v. *Taft,* 109 Fed. Rep. 825; *City of Cin-*

*cinnati* v. *Guckenberger,* 60 Ohio St. 353; *Elyria Gas Co.* v. *Elyria,* 57 Ohio St. 374; Cardozo, Jurisdiction of Court of Appeals, § 6; *Reed* v. *McCord,* 160 N. Y. 330; *Wells* v. *Town of Salina,* 119 N. Y. 280.) The agreement, if construed merely as a brokerage or agency agreement, is in violation of section 9 of the General Municipal Law, requiring that bonds of municipal corporations or civil divisions of the State shall be sold at public sale. (*Armstrong* v. *Village of Fort Edward,* 159 N. Y. 315; *Mayor, etc.,* v. *Sands,* 105 N. Y. 210; *Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *People ex rel. Lester* v. *Eno,* 176 N. Y. 513; *Smith* v. *County of Los Angeles,* 99 Cal. 628; *Consolidated School District* v. *Union Trust Co.,* 215 Pac. Rep. 28.) Review by certiorari does not lie except from determinations of quasi judicial bodies. There is no jurisdiction to entertain the certiorari order. (*People ex rel. Desiderio* v. *Conolly,* 238 N. Y. 326; *People ex rel. Kennedy* v. *Brady,* 166 N. Y. 44.)

*Clarence P. Moser* for respondents. The agreement is valid. (*Mayor, etc.,* v. *Sands,* 105 N. Y. 210; *Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *Armstrong* v. *Village of Fort Edward,* 159 N. Y. 315; *Braxton* v. *Mendelson,* 233 N. Y. 122; *People ex rel. O'Callahan* v. *French,* 123 N. Y. 636; 2 C. J. 700; *Bain* v. *Brown,* 56 N. Y. 285; *Gardner* v. *Ogden,* 22 N. Y. 327; *Moore* v. *Moore,* 5 N. Y. 256; *DeCaters* v. *LeRay DeChaumont,* 3 Paige Ch. 178; *Smith* v. *County of Los Angeles,* 99 Cal. 628; *Consolidated School Dist.* v. *Union Trust Co.,* 215 Pac. Rep. 28; *Wells* v. *Town of Salina,* 119 N. Y. 280; *Ketchum* v. *Buffalo,* 14 N. Y. 356; *Peterson* v. *Mayor, etc.,* 17 N. Y. 449; *Parker* v. *Board of Supervisors of Saratoga,* 106 N. Y. 392; *Village of Carthage* v. *Frederick,* 122 N. Y. 268.) Certiorari is the proper remedy. (*People ex rel. Desiderio* v. *Conolly,* 238 N. Y. 326; *Eastman Kodak Co.* v. *Richards,* 123 Misc. Rep. 83; *People ex rel. Kennedy* v. *Brady,* 166 N. Y. 44; *People ex rel. Myers* v. *Barnes,* 114 N. Y. 317.)

CRANE, J. Section 9 of the General Municipal Law (Cons. Laws, ch. 24), relating to the issuance of municipal bonds, provides: "All bonds hereafter issued by any municipal corporation, or by any school district or civil division of the state, shall be sold, in the case of a city of the first class as required by its charter or by any special act under which such bonds are issued, in the case of a city of the second class as required by section sixty-one of the second class cities law, and in all other cases at public sale not less than five or more than thirty days after a notice of such sale, stating the amount, date, maturity and rate of interest, has been published at least once in the official paper or papers, if any, of any such municipality, provided that if there is no official paper, then such notice of sale shall be published in a newspaper published in the county in which such bonds are to be issued, or a copy thereof shall be sent to and published in a financial newspaper published and circulating in New York city."

The question arises in this case whether the town of Irondequoit had authority under the peculiar circumstances of this case to pay reasonable brokerage fees for procuring purchasers of its certificates of indebtedness and later of bonds to take them up. The situation as it existed at the time of the alleged contract with the petitioners made it very necessary for the town to have immediate financial help and assistance. Confining our statements to the certificates and bonds in question, there were outstanding, due on October 20, 1927, $600,756.47 of certificates of indebtedness held by local banking institutions. For some reason the holders were unwilling to extend further credit and the payment of these certificates on the due date had been demanded. The day of reckoning was near at hand. Under these circumstances the brokerage firm of Sage, Wolcott & Steele was consulted and employed, pursuant to the following letter and resolution quoted only in so far as

is material. On October 17, 1927, three days before the maturity of the certificates, the brokers wrote: "We think we can find some banks or bankers somewhere who will take care of the Orchard Park certificates that mature on Thursday of this week, October 20th, and also take care of the bonds that must be sold at an early date to finance the Orchard Park temporary borrowing. * * * We are willing to guarantee to find a purchaser who will finance a 5% renewal certificate on the $600,756.47 Orchard Park until February 1st, and also agree to find a purchaser who will buy the bonds that must be sold to take up the short-term borrowing on behalf of Orchard Park, when the Town Board offers the bonds for sale."

Compensation is suggested at two per cent of the face amount of the bonds if a purchaser is found who at the time of the sale will take the bonds at a rate of interest which, including premium, if any, results in the town being able to borrow its money on a four and three-quarters basis or lower.

The board thereafter, as shown by its minutes, approved the agreement of Sage, Wolcott & Steele, and agreed to pay the compensation stated.

The brokers, it will be noted, contracted to do two things: *First*, to procure a purchaser for the maturing certificates of indebtedness. These certificates were not within the provision of section 9 of the General Municipal Law, above quoted, and could be disposed of at private sale. They were in the nature of short-term notes to meet emergencies. They had to be paid either out of cash on hand, or from the proceeds of bonds issued and sold for the purpose of retiring them. This is why the brokers stated in their letter of the seventeenth that bonds would have to be issued and put on the market within three months, not later than February first. The *second* thing which the brokers agreed to do was to provide or procure a purchaser or purchasers for the bonds to be issued. This was not to be at a private

sale, but in full compliance with the General Municipal Law. It might be that after the requisite advertisement and offer at public sale there would be no bid for the bonds which had to be sold at not less than par. The provisions of section 9 required a public sale after advertisement, but of course no law could provide or guarantee a market. We are well aware that prices and values are quite independent of the law. Legislation may materially aid in creating confidence and a demand for securities, but it seldom, if ever, can force or create a market. Therefore, when the town of Irondequoit purposed to put its bonds on the market February 1, 1928, after complying with the provisions of section 9, there was a chance at least that no purchasers would appear or bid at the public sale. The refusal of the banks to extend further credit or renew the certificates of indebtedness may very well have caused the town authorities to fear such a result. For their failure to procure bidders or purchasers the brokers might have been liable on their contract for such damages as could be proved, but they did not in such a case agree to purchase the bonds for themselves.

Under these circumstances and conditions we are of the opinion that the town board, acting in good faith, was permitted to procure at reasonable expense help and assistance in financing its certificates and creating a market for its bonds. The General Municipal Law was enacted for the purpose of doing away with private sales of these municipal securities, requiring open competitive bidding so that the public might receive the benefits of the highest price obtainable. The law required notice of the sale to be published in newspapers, but it did not necessarily restrict all advertising or notice to this medium. Circumstances might arise, as in this case, where additional efforts would have to be made to sell bonds at public sale at or above par. We think those circumstances existed here and that the town board was

justified in making the arrangement which it did with brokers of repute to provide purchasers of its certificates and bidders for the bonds to later redeem them. All the requisites of the General Municipal Law relating to the sale of bonds were complied with. There is no question of the brokers' fees being excessive and unreasonable or incurred in any attempt to subvert or contravene the law.

In *Armstrong* v. *Village of Fort Edward* (159 N. Y. 315); *Brownell* v. *Town of Greenwich* (114 N. Y. 518) and *Mayor, etc.,* v. *Sands* (105 N. Y. 210) it was held that the power in a municipality to sell bonds carried with it the implied power to employ such reasonable or proper assistance as might be requisite to bring about an advantageous sale, including the employment of a broker. These cases were decided before the amendment to section 9 of the General Municipal Law by chapter 534 of the Laws of 1917, as above quoted, and so are not decisive on this point.

The cases of *Smith* v. *County of Los Angeles* (99 Cal. 628); *Consolidated School District No. 20* v. *Union Trust Co.* (215 Pac. Rep. 28 [Wash.]); *City of Cincinnati* v. *Guckenberger* (60 Ohio St. 353) and *Elyria Gas & Water Co.* v. *City of Elyria* (57 Ohio St. 374), cited by the appellant, held that the municipal authorities neglected to follow statutory law — they did less than the law required.

The review of the action of the present town board by a writ of certiorari is the procedure authorized by our decision in *People ex rel. Desiderio* v. *Conolly* (238 N. Y. 326).

The order should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Order affirmed.